IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-03193-WYD-MJW

MARK KILCREASE,

      Plaintiff,

v.

DOMENICO TRANSPORTATION CO.,

      Defendant.

---

## ORDER ON SUMMARY JUDGMENT

---

I.    <u>INTRODUCTION</u>

     THIS MATTER is before the Court on Defendant's Motion for Summary Judgment filed January 2, 2015.  A response was filed on February 13, 2015, and a reply was filed on March 6, 2015.  Defendant seeks summary judgment on Plaintiff's claims of discrimination and retaliation under the Americans with Disabilities Act ["ADA"] arising from its failure to hire Plaintiff as a truck driver in October 2009.  For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

II.    <u>FACTUAL BACKGROUND</u>

     I note at the outset that I have considered all the facts and evidence cited by the parties, as well as the responses and replies as to these facts, but have recited only those facts I deem most material to my ruling.  Exhibits submitted by Defendant are referenced by letter, *e.g.,* Exhibit A.  Exhibits submitted by Plaintiff are referenced by

number, *e.g.*, Exhibit 1.  I have not cited to the record when the facts were undisputed or where I otherwise thought it was unnecessary.

    A.    <u>Defendant's Statement of Facts</u>

        1.    <u>Plaintiff's Background and Application to Domenico</u>

Plaintiff was diagnosed with acute myeloid leukemia, also known as acute myelogenous leukemia ["AML"], in June 2002.  Plaintiff has been free of disease since January 2004 (Ex. A, September 18, 2007 Letter from P. Dickerson, R.N.P. and Dr. T. Braun), but Plaintiff asserts he was not declared healthy enough to return to work until 2006.  (Ex. 1, Mark Kilcrease Aff. ["Pl.'s Aff."], ¶ 6.)

Plaintiff first obtained his commercial driver's license ["CDL"] in September 1994.  His last job utilizing his CDL was from April to May 2002.

In October 2009, Plaintiff saw a newspaper advertisement for a truck driver position with Defendant.  The advertisement stated that one of the job requirements was three years verifiable mountain driving experience.  Plaintiff applied for the position through submitting a Pre-Application Questionnaire.  It stated that he had eight years tractor/trailer experience, and three years of mountain driving.

The Pre-Application Questionnaire included a request for the names of "the MOST RECENT motor carriers [the applicant had] driven for."  (Ex. F.)  Plaintiff admits that he did not list his most recent motor carrier employers.  (*Id.*)  He noted, however, on the Questionnaire that his recent years of unemployment were due to the fact that he had been recovering from and entering remission from AML.  Thus, Plaintiff stated he had been "unemployed since June 13th, 2002, in remission from acute myelogenous

leukemia." (*Id.*)  Plaintiff did not indicate why he had no work experience since entering into remission.

### 2.   Defendant's Three Year Mountain Driving Requirement

At the time Plaintiff applied for the job in October 2009, Defendant's routes were heavily concentrated in the mountains.  An average truck driving shift included seven hours of mountain driving and four hours front range driving.  In any given month, a driver employed by Defendant could expect to drive mountain routes 70% of the time; during the winter months, this could increase to almost 100%.  Defendant's drivers drove three million miles a year up the Interstate 70 corridor, with virtually no accidents.

Defendant presents evidence that at the time Plaintiff applied for the truck driving job in October 2009, it had a requirement that applicants have at least three years of mountain driving experience.  (Ex. H., Victor Domenico Dep. ["V. Domenico Dep."] at 202:19-25 and 154:16-22; Ex. I, Phil  Domenico Dep. ["P. Domenico Dep."] at 63:21-2, 91:3-7; 92:21-25.)  According to Victor Domenico, the CEO and President of Defendant, this requirement was imposed so that Defendant could insure the cargo is transported safely to its destination and so that the driver and the driving public who share the roads with tractor-trailers are not injured or killed due to inexperienced drivers.  (V. Domenico Aff., Ex. K, at ¶ 10.)  Victor Domenico testified that at the time Plaintiff applied for the job in October 2009, Defendant would not have hired someone with less than two years mountain driving experience.  (Ex. H, V. Domenico Dep. at 200:15–201:3.)

Plaintiff denies that Defendant had a requirement that all applicants for truck driving positions have three years of mountain driving experience at the time he applied.

He points out that there was no written policy regarding this requirement. (Ex. H, V. Domenico Dep. at 154:16-20.) Moreover, he asserts that Defendant hired at least three truck drivers that did not have three years of mountain driving experience around the time that Plaintiff submitted his Pre-Application Questionnaire; namely, Phil Domenico, John Presho ["Presho"] and Rubin Pete ["Pete"]. (Ex. 6, P. Domenico Dep. at 180:8-191:7; Ex. 7, Presho Application Materials; Ex. 8, Pete Application Materials; Ex. 19, Monica Domenico Dep. at 45:11-13.)

In reply, Defendant acknowledges that the three years of mountain driving experience was not a written policy, but asserts it is undisputed that it was a company requirement. (Ex. H, V. Domenico Dep., at 9:17-10:5; 202:19-25; 203:10-11; Ex. I, P. Domenico Dep. at 192:21-25.) In addition, it notes that this requirement was clearly stated on the advertisement for the position that was seen by Plaintiff. (Ex. E; Ex. B, Pl.'s Dep. at 92:22-93:17).

Defendant also asserts that Plaintiff's statement that it hired three drivers who did not have three years of mountain driving experience around the time Plaintiff applied for the position is not supported by the facts. Initially, Defendant notes that the evidence upon which Plaintiff relies does not support the assertion that the hiring of the three drivers meant that it did not have a three year requirement of mountain driving in October 2009. Further, Defendant asserts that all three drivers met the three year requirement.

Thus, Defendant asserts as to Phil Domenico that he had the requisite mountain driving experience when he was hired in 2007, two years prior to Plaintiff's application.

He had at least four years of tractor–trailer driving experience, including mountain driving.  (Ex. L, P. Domenico Dep. at 41:6-42:22, 44:7-13; Ex. M, V. Domenico Dep. at 7:21-8:5; 214:10-11.)[1]  While Victor Domenico admitted that Phil Domenico did not have *recent* driving experience, he did meet the three year mountain driving experience requirement.[2]

Presho was hired in January 2009, nine months before Plaintiff filled out the application.  Plaintiff relies solely on Phil Domenico's deposition testimony to support his claim that Presho did not have three years of mountain driving experience.  This is based on Phil Domenico's conclusion during his deposition based on the application materials presented to him that Presho did not have three years mountain driving experience.  (Ex. I, P. Domenico Dep. at 85:16-22; Ex. 6, P. Domenico Dep. at 186:18–23.)  However, Phil Domenico testified that he did not recall Presho and that he may have been hired by Randy Gerlock, another employee of the Defendant.  (Ex. 6, P. Domenico Dep. at 181:21-15.)  Moreover, Defendant presents evidence that the application materials are not conclusive, as employees were also often interviewed and tested prior to hiring and such interview could reveal additional experience.  (Ex. K, V. Domenico Aff. at ¶ 4.)  Ultimately, the evidence presented by Defendant shows that Presho had more than three years of experience at the time he was hired (Ex. O), which has not been refuted by Plaintiff.

---

[1] While Phil Domenico did not have recent driving experience when he was hired, he had experience back in the 90's.  (Ex. 19, Monica Domenico Dep. at 45:11-13; Ex. 6, P. Domenico Dep. at 123:6-15.)

[2] Victor Domenico "knew [Phil's] experience.  [He] knew his level.  [He] knew his capabilities.  [He] drove with him."  (Ex. M, V. Domenico Dep. at 192:16-18.)

Pete was hired on October 14, 2009, the same month Plaintiff submitted his application. (Ex. N, Driver's Info Report.)   Pete is the only one of the three drivers who was actually hired around the time Plaintiff submitted his application.  The evidence relied on by Plaintiff in his response does not establish that Pete lacked the requisite three years mountain driving experience.  Pete's application materials indicate he had experience as a truck driver with DG Coleman (3 months), Mile High Frozen Foods (13 months); White Farms Trucking (22 months); and Turner Asphalt (14 months).  (Ex. 8.)  Phil Domenico testified that he knew DG Coleman and Mile High Frozen Foods had mountain routes (meaning that Pete's application showed he had 16 months of conceivable mountain driving experience), but he did not know whether White Farms Trucking had such routes.  (Ex. 6, P. Domenico Dep. at 188:9-13; 189:11-23.)  He testified, however, that "[s]omebody probably interviewed this guy and asked about these things and was satisfied with the answers." (*Id.* at 190:2-10.)  In its reply, Defendant presented evidence that Pete did have the required three year experience in mountain driving.  (Ex. P, E-mail; Ex. Q, Rubin Pete Statement.)  Again, this evidence has not been refuted by Plaintiff.

Defendant asserts that in addition to Pete, it hired five other employee drivers in October 2009.  These drivers had between 15 and 24 years driving experience, including significant mountain driving experience, at the time they were hired.  (Ex. K, V. Domenico Aff. at ¶ 9.)

According to Defendant, its requirement for three years mountain driving experience meant experience driving on a six percent (6%) grade sustained for at least

one mile.  (Ex. H, V. Domenico Dep. at 9:12-20; 10:9-13; Ex. I, P. Domenico Dep. at 177:4-7; 176:18-23.)  Defendant would look for drivers who drove in the mountains on a regular basis, which meant more than once or twice a month and during winter months. (Ex. H, V. Domenico Dep. at 201:4-16.)

Plaintiff denies that the requirement for three years mountain driving experience meant experience driving on a 6% grade sustained for at least one mile.  He points to testimony that the route from Denver to Laramie, Wyoming might be considered mountain driving, even though it did not contain a 6% grade for more than one mile. (Ex. 5, V. Domenico Dep. at 7:21-11:18.)  In reply, Defendant acknowledges it might recognize a driver who has experience with a route from Denver to Laramie as someone with some mountain driving experience, and that it would be acceptable for a person applying for a position to write such experience down on its application as mountain driving experience.  However, it notes that Plaintiff never had any Denver to Laramie routes.  Plaintiff also points to Phil Domenico's testimony that the skills conducive to handling a tractor/trailer in the mountains would be equally as important in driving in high winds, and that those skills would be required in driving from Denver to Nebraska.  (Ex. 6, P. Domenico Dep. at 38:25-40:8.)  This does not refute, however, the testimony regarding what mountain driving consisted of.

3.    Plaintiff's Truck Driving Experience

Plaintiff's resume lists 11 jobs and work with the United States Navy and Department of Defense ["DOD"].  Defendant asserts that the total time Plaintiff was employed in any job between 1994 and 2002 was 76 months or 6.33 years, and that the

total time Plaintiff was employed as a truck (not van or bus) driver was 54 months, or 4.5 years.  (Ex. G, Pl.'s Resume; Ex. C, Pl.'s Discovery Resps.; *see also* Def.'s Reply Br. in Supp. of Mot. Summ. J. at 6.)[3]  Plaintiff denies this, pointing out that he also drove a tractor-trailer as part of his employment with the Navy and the DOD (from 1973-1977 and 1989 to 1994).  (Ex. 3, Pl.'s Dep. at 69:12-70:13.)

Plaintiff testified that the "eight (8) years" of tractor/trailer experience stated on the Pre-Employment Questionnaire indicated the number of years he had his CDL, from May 1994 to 2002, not his actual time driving.  (Ex. B., Pl.'s Dep. at 91:11-24.)

As to mountain driving experience, I find for purposes of summary judgment that the evidence shows Plaintiff had three driving jobs that involved some type of mountain driving:  Camas of Colorado ["Camas"], C.R. England, and ProDrivers.  (*See* Ex. 3, Pl.'s Dep. at 81:4-11.)[4]

Plaintiff worked for ProDrivers from October 2001 to March 2002, wherein he drove for Sealy and other companies.  The Sealy job required driving approximately 50% of the time in the mountains and 50% of the time in the front range.  (Ex. B, Pl.'s Dep. at 61-7:25, 63:2-64:12; *see also* Ex. C at 2.)  The mountain driving included routes with a 6% grade.  (Ex. B, Pl.'s Dep. at 85:2-3.)  Plaintiff drove exclusively for Sealy his last two months of work at ProDrivers.  (*Id.* at 62:1-10.)

---

[3] Defendant originally asserted in its motion that Plaintiff was employed as a truck driver for 81 months or 6.75 years, but corrected that amount in its reply.

[4] Plaintiff has not presented evidence that his other truck driving jobs involved mountain driving.

Plaintiff worked for C.R. England during the non-winter months of April 1994 to May 1994, and some of the routes involved driving on a 6% grade.  (Ex. 3, Pl.'s Dep. at 81:12-18, 85:2-8.)  This job involved three weeks of training, three weeks of driving with a company driver, and three weeks driving with a classmate.  There was no solo driving. Plaintiff drove the route on I-80 with a training partner four of the nine weeks that he worked for C.R. England.  (*Id.* at 81:19–24.)

Finally, Plaintiff drove trucking routes for Camas from May to October 1999.  (Ex. B, Pl.'s Dep. at 53:16-54:12; see also Ex. C  at 3-4.)  Plaintiff testified that his route involved back roads with rolling hills that may or may not have been 6% grade but "was up there pretty close."  (Ex. B, Pl.'s Dep. at 53:16–54:6; 121:5-12.)

Plaintiff testified that, at the time of applying for the job with Defendant, he did not believe he had the required mountain driving experience.  Thus, he stated:

> Q. Looking at the ad, did you think you had the qualifications listed in the bullet points?
> A. Well, everything except the three years.
> Q. So you didn't think you had the three years' verifiable mountain driving?
> A. Well, you know, like I said, I miscalculated the years.· Back then, when I put three years down, it was a year and a half, mainly.

(Ex. B, Pl.'s Dep. at 93:13-20.)  Plaintiff also testified:

> Q. And on the three years of mountain driving -- it's the next -- listed below, [where it] asked for the experience listed above, how many years apply to mountain driving, what were you thinking when you put the three?
> A. I just miscalculated, mis-added all the months I drove in the mountains -- or weeks.
> Q. If you were filling this out today, what would you put?
> A. Probably the same thing because I haven't been driving.
> Q. I'm sorry. I thought you said you miscalculated putting the three. So what number would you put to be accurate?
> A. Maybe a year and a half.

Q. That would be the Pro-Drivers and the CR England jobs?
A. Basically, yeah.
Q. Basically?· Is there any other?
A. Well, yeah -- no.

(*Id.* at 91:25–92:19.)

In response to the previous paragraph, Plaintiff denies that he did not have the required mountain driving experience at the time of his application to Defendant in October 2009.  He points out that Defendant did not define "mountain driving" on its Pre-Application Questionnaire, (Ex. 4 at 1), and points to other deposition testimony where he stated in response to questioning from his counsel that he thought his driving experience does apply to mountain driving.  (Ex. 3, Pl.'s Dep. at 120:6-122:20.)  When asked why he thought he had three years of this experience he testified:

A. Well, I've over here in Denver and Rocky Mountains, and I just figured that driving down here plus wherever they sent me all those years, all that time driving down here would qualify me as driving in the mountain area, you know.  And there's some, you know – whatever the incline is, 6 percent or whatever.  And I just figured that would be the right answer to give because I'm driving in – year-round, pretty much, in the mountain areas, mountainous areas.

(*Id.* at 120:12-22.)  He also testified that it was possible that he could have been given assignments to drive west into the mountains by his employers, and that he was qualified to drive such routes.  (*Id.* at 121:5-122:20.)

In reply, Defendant points out that Plaintiff's own statements, discovery responses, and resume indicate that he was not driving a tractor–trailer year round in the mountains.  Further, he admitted that his actual mountain driving experience was a year and a half.  (Ex. B, Pl.'s Dep. at 93:16–20; see also 92:12–14.)  Defendant also

asserts that, even giving Plaintiff credit for the three jobs he relies on as his mountain driving experience, Plaintiff would only have thirteen (13) months of experience (two months with CR England; five months with Camas of Colorado; and six months with ProDrivers).  It also asserts that Plaintiff's actual mountain driving experience time is reduced even further when taking into account the fact that he only drove four (4) weeks for CR England and never alone (*id.* at 81:16–18), and that his mountain driving assignment for ProDrivers with Sealy was only three months.

4.    <u>Defendant's Decision to Not Move Plaintiff Forward</u>

After reviewing Plaintiff's Pre-Application Questionnaire, Phil Domenico determined it was not complete because Plaintiff did not list the most recent carriers he had driven for.  (Ex. I, P. Domenico Dep. at 69:6-70:3, 75:17-22.)  Indeed, it is undisputed that Plaintiff did not list any employer names on his Pre–Application questionnaire.  Phil Domenico did not ask Plaintiff to provide that information, explaining:

> A. And in my experience, when somebody doesn't answer something or leaves it blank or -- then they don't have it. I move on to the next candidate.
> Q Well, he didn't leave it blank, though. He told you that since 2002 he's been in remission from leukemia, correct?
> A But that doesn't mean anything to me. I mean, it's a terrible situation for him, but that's not -- I'm trying to -- this form is trying to prequalify somebody to see what we're going to do next, if we're going to move him forward in our process. This form is incomplete. There's an expectation I have -- part of the qualification is that somebody would fill a form out, write down what the form is asking you to write down.

(*Id.* at 70:4-21.)  Thus, Plaintiff was not moved forward in Defendant's hiring process.

(Ex. I, P. Domenico Dep. at 87:2-10; *see also* Ex. F.)

-11-

Plaintiff denies, however, that the reason he was not moved forward in Defendant's hiring process was because he did not list his experience, asserting that the actual reason for eliminating him from consideration is a disputed fact.  I agree.  In that regard, Plaintiff presents evidence that at the time he applied to Defendant, Phil Domenico made both a handwritten notation on Plaintiff's driving record and an entry into the computer database that Defendant's insurance company requires three years of *recent* CDL experience and that is the reason Plaintiff did not move forward in the application process.  (Ex. 6, P. Domenico Dep. at 120:1-122:17; 147:1-148:25; Ex. 9, New Driver Tracking Information, Mark Kilcrease entry; Ex. 10, Mark Kilcrease Driving Record with Phil Domenico's handwritten note.)

Three months after Plaintiff applied for the job, Phil Domenico wrote a memorandum to his brother, Victor Domenico, about Plaintiff's application.  (Ex. 11, January 20, 2010 Memorandum.)  In that memorandum, Phil Domenico stated:

> The reason why I don't believe we spoke when he initially filled out the Pre-App is because he wrote on it that he had been unemployed since June, 2002. Had I seen that then I would've immediately told him he's ineligible to work for Domenico Transportation due to our requirement of 3 years recent class A/CDL experience as promulgated through our insurance carrier.

(*Id.*)  Defendant's insurance carrier did not, however, have a requirement of 3 years *recent* class A/CDL experience, nor did the insurance carrier require 3 years *recent* mountain driving experience.  (Ex. 12 at ¶ F; Ex. 6, P. Domenico Dep. at 74:1-13.)  Defendant's insurance carrier, Great West Casualty Company, only required "[a] minimum of two (2) years experience in the operation of Tractor/Trailer Equipment."

(Ex. 12 at ¶ F.)  Upon receiving the January 10, 2010 memorandum from Phil

Domenico, Victor Domenico took no steps to correct Phil Domenico's error regarding

the insurance company's policy.  (Ex. 5, V. Domenico Dep. at 153:5-154:9.)

After making the decision to not move Plaintiff forward in the job hiring process,

Phil Domenico called Plaintiff.  He testified as follows about this:

> Q. Well you called him up and told him that he wasn't going to move on to
> the next level.
> A. As a courtesy I called him up and let him know.
> Q. And you didn't tell him it was because he didn't fill out the form
> correctly, did you?
> A. I told him that he was not qualified.  He doesn't possess the three
> years.
> Q. No. You told him that there was some insurance company policy that
> prevented you from hiring him, correct?
> A. He would not qualify in our minimum underwriting guidelines.

(Ex. I, P. Domenico Dep. at 76:3-15.)

Defendant asserts that during that phone call, Plaintiff starting talking about a

lawsuit and mentioned the ADA.  Phil Domenico testified as follows about this:

> A. I called him up and told him that he didn't meet our minimum
> underwriting guidelines, and so I was going to move him past -- or move
> past him. At that point, then, he started talking about a lawsuit, about, We
> can't do that. I listened to that for a while, and I says, Well, be that as it
> may, you know, you're not qualified. You don't meet our guidelines. I can't
> tell you that's the exact verbiage, but that's the nature of the conversation.

(Ex. I, P. Domenico Dep. at 87:2-10; *see also* 88:6-12 (discussing phone call).)

In response to the previous paragraph, Plaintiff admits that he told Phil Domenico

that Defendant might be violating the ADA by refusing to hire him due to his AML

diagnosis.  (Ex. 3, Pl.'s Dep. at 99:2-100:25; Ex. 9.)  Plaintiff also asserts that Phil

Domenico told him that he would not be considered for hire because "the insurance

-13-

companies that underwrite [Defendant's] insurance policies wouldn't want to cover

[Plaintiff] because of [his] AML." (Ex. 3, Pl.'s Dep. at 100:13-15.)  Plaintiff testified:

> A. And so I said, Let me get this straight. You want me to understand that
> the reason you're not – I'm not qualified, you're not going to hire me is
> because of my AML, my remission of AML.  And he said, Yes, in a sense.
> And I said, I talked to a federal judge, a friend of mind, that said this
> disease I have, AML, might fall under the Americans with Disability Act,
> and Phil replies by, again, yes, or yeah.

(Id . at 100:16-23.)

In reply to the previous paragraph, Defendant asserts that it remains undisputed

that Plaintiff did not mention the ADA or complain about his ADA concerns until the one

and only phone call between Plaintiff and Phil Domenico.  This call occurred after

Defendant decided to not move Plaintiff forward in the hiring process, and Plaintiff's

statement came after Phil Domenico told him this decision.  (*Id.* at 100:11–23.)

Defendant asserts that Plaintiff's mention of the ADA or his threat of a lawsuit did

not cause Defendant to change its course of action with him as it had already decided to

not move him forward in the hiring process, nor did it cause Defendant to take any

additional action against Plaintiff.  This fact was not specifically disputed by Plaintiff.

Instead, Plaintiff stated in response that Phil Domenico made no inquiries into his

qualifications or whether his present health condition would allow him to perform the

functions of the job and instead just ended the phone call.  (Ex. 1, Pl.'s Aff. at ¶ 13.)

B.    Plaintiff's Statement of Additional Facts

After his 2002 AML diagnosis, Plaintiff was required to undergo numerous

treatments and surgeries and was unable to work from 2002 through 2006.  (Ex. 1, Pl.'s

Aff., ¶ 6.)  Prior to his diagnosis, Plaintiff asserts that he had been employed consistently as a truck or bus driver since 1994.  (Ex. 13, Pl.'s Resume; Ex. 2 at 1-8.)  In reply, Defendant reiterates as explained in Section II.A., *supra*, that Plaintiff was employed as a truck driver for only 4.5 years.  I find that this is a disputed fact but is not material.

During his cancer battle, it is undisputed that Plaintiff maintained a CDL Class A driver's license and a clean driving record. It is also undisputed that he qualified for social security disability insurance.  Plaintiff's social security benefits ended in 2006 when it was determined that he was healthy enough to return to work.  (Pl.'s Aff., ¶ 6.)

In 2006, Plaintiff began actively seeking full-time employment in his previous occupation as a truck driver.  Plaintiff encountered difficulty in finding a job, so he requested and obtained a letter from the Department of Veteran Affairs Medical Center to explain his lengthy period of unemployment to potential employers.  Despite what Plaintiff characterizes as his best efforts, he was unable to find new employment upon entering remission from AML.  (Ex. 1, Pl.'s Aff., ¶ 8.)

Plaintiff filed a Charge and Amended Charge of Discrimination with the EEOC in April 2010, to which Defendant responded in May 2010.  (Exs. 15, 16.)  In February 2011, Plaintiff filed a Second Amended Charge of Discrimination, to which Defendant responded in March 2011.  (Exs. 17, 18.)

According to Plaintiff, Defendant's rationale for failing to hire him has changed during the course of this litigation.  Thus, during the EEOC proceedings, Defendant consistently asserted that the company declined to hire Plaintiff "because he lacked 3

years of *recent* driving experience" not because he lacked mountain driving experience, as Defendant now asserts.  (Ex. 16 at 3; Ex. 18 at 1).  Defendant denies this, asserting that Plaintiff was not moved forward in the process because he failed to list any employer's name on his Pre–Application Questionnaire, as discussed in Section II.A, *supra*.  Defendant asserts that Plaintiff's lack of mountain driving experience was not known at the time Phil Domenico decided to not move him forward in the process.  He did not see Plaintiff's resume until August 2014, when he was deposed in this case.  (Ex. L, P. Domenico Dep. at 100:5–8, 100:18–20.)  Victor Domenico did not see Plaintiff's resume until 2013.  (Ex. M, V. Domenico Dep. at 52:6–9; Ex. K, V. Domenico Aff. at ¶ 7.)

Prior to Plaintiff's job application and the initiation of these legal proceedings, Defendant had no anti-discrimination policy addressing applicants or employees with disabilities, nor had the company offered any ADA training to its employees.

III.   ANALYSIS

A.   Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,. . . show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A fact is 'material' if. . . it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *Horizon*, 220 F.3d at 1190. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). When applying the summary judgment standard, the court must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Id.* (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.    The Merits of Domenico's Arguments

1.    Plaintiff's Claim of Discrimination Under the ADA

Plaintiff's first claim asserts that Defendant intentionally discriminated against him by failing to consider him for employment on account of his disability. To state a prima facie case of discrimination under the ADA, Plaintiff must establish that: (1) he is a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he "suffered discrimination by an employer or prospective employer because of that disability. *Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008). If a prima facie case is established, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003). "If defendant articulates a nondiscriminatory

reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual." *Id.*

Defendant asserts that Plaintiff cannot establish a prima facie case, focusing on only the second element. It asserts that Plaintiff was not qualified for the position he applied for because he did not have the required three years of mountain driving as set forth in the advertisement.[5] The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, "[a]s a condition to performing the essential functions of the job, . . . an individual must first satisfy 'the requisite skill, experience, education, and other job-related requirements of the employment position.'" *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001) (quoting 29 C.F.R. § 1630.2(m)). If the court concludes that the individual is unable to perform the essential functions of the job, it then determines whether any reasonable accommodation by the employer would enable him to perform those functions. *Davidson*, 337 F.3d at 1190.

In this case, the dispute centers on the first part of the analysis—whether Plaintiff can perform the essential functions of the job. "The term 'essential function' is defined as 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Davidson*, 337 F.3d at 1191 (quotations omitted). It "does not

---

[5] While Plaintiff argues, and I agree, that there are genuine issues of material fact as to why Plaintiff was not hired for the job (Defendant asserting it was because the lack of any stated experience on the Pre-Application Questionnaire and Plaintiff asserting it was illegal disability discrimination), that does not impact the prima facie case that Plaintiff must first establish. Instead, it is relevant only to Defendant's articulation of a nondiscriminatory reason for not hiring Plaintiff and whether this is pretextual. If Plaintiff cannot establish a prima facie case, then this argument is moot.

include marginal functions of the position." *Id.* Determining whether a particular function is essential is a factual inquiry, and requires courts to "give consideration to the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description", although "such evidence is not conclusive." *Id.*

Here, Defendant has presented evidence that three years of mountain driving experience was a requirement of the job Plaintiff applied for.  While it was not a written policy in the handbook, it was in the advertisement and Defendant presented deposition testimony of Victor and Phil Domenico that it was company policy.  Evidence was also presented that this requirement was necessary because Defendant's routes were heavily concentrated in the mountains, and that it was imposed to insure cargo was transported safely to its destination and that people were not killed due to inexperienced tractor-trailer drivers.  I find from the foregoing that the three year requirement of mountain driving "is job-related" and "consistent with business necessity." *Davidson*, 337 F.3d at 1191.

However, the question of whether a job requirement is an essential function "initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement.'" *Davidson*, 337 F.3d at 1191 (quoting *Tate*, 268 F.3d at 993).  Here, Plaintiff contends that three people were hired that did not meet this job requirement and that the requirement was thus not uniformly enforced.  I find that Plaintiff's argument is ultimately not supported by the evidence.  First, as to Phil Domenico, while it is undisputed that he was hired without

-19-

*recent* truck driving experience, Plaintiff has not refuted the evidence that he did have at least three years of mountain driving experience in his past.  As to the other two employees referenced by Plaintiff, while Phil Domenico testified in his deposition that it did not appear from their applications that they had the required three years of mountain driving experience, they were interviewed by another employee.  Ultimately, the evidence submitted in Defendant's reply brief shows that they did have the required experience at the time they were hired (Exs. O, P, and Q), which evidence has not been refuted by Plaintiff.

Based on the foregoing, I find that the requirement of three years mountain driving experience was an essential function of the job.  I also find, even construing the evidence in the light most favorable to Plaintiff, that he did not meet this requirement.  First, while mountain driving experience was not defined in the application, Defendant presented evidence that it involved driving a truck on a six percent (6%) grade sustained for at least one mile.  It also could be met by showing truck driving experience between Denver, Colorado and Laramie, Wyoming.  Plaintiff has not presented facts sufficient to show that he has three years of such experience.

Thus, while Plaintiff may have been driving in Colorado and the mountains all his life, this does not meet that requirement.  Moreover, as to Plaintiff's assertion that he could have received a route assignment into the mountains at any time by his prior employers, he does not identify any of these companies or potential routes he could have been assigned.  And as Defendant notes, this statement appears to be in contrast to Plaintiff's declarations about his routes stated in his response brief.  Finally, I agree

with Defendant that Plaintiff's supposition about potential assignments or his own mountain driving skills does not refute the undisputed material fact that he had only three jobs that may have qualified for Defendant's three year mountain driving requirement, and that the time spent on these jobs did not meet that requirement. There is also no evidence to support a finding that Defendant would believe that Plaintiff's experience would satisfy the three year requirement.

I therefore find that Defendant's Motion for Summary Judgment must be granted as to the first claim asserting discrimination under the ADA.  Plaintiff has not come forward with specific facts showing the presence of a genuine issue of material fact for trial in regard to him being qualified for the job.

2.    Plaintiff's ADA Retaliation Claim

To establish a prima facie case of retaliation, Plaintiff must show "'(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Melin v. Verizon Business, Inc.*, 595 F. App'x 736, 738 (10th Cir. 2014) (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007)).  Only the third element is at issue in this case.  "Causal connection may be established by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  *Reinhardt v. Albuquerque Public Schs. Bd. of Educ.*, 595 F.3d 1126, 1134 (10th Cir. 2010) (quotation omitted).

Here, Defendant does not contest that Plaintiff engaged in protected activity by raising concerns about the ADA and potential disability discrimination in the phone call with Phil Domenico.  The problem is that these complaints occurred only *after* Defendant had decided not to move Plaintiff forward in the hiring process, which was the adverse decision at issue in the case.  Phil Domenico testified that the phone call was only a courtesy call to Plaintiff to let him know about that decision.  Plaintiff has not presented any evidence to the contrary.  I agree with the finding of another district court that "[t]he occurrence of the adverse employment action prior to the alleged protected activity renders a plaintiff unable to bring a retaliation claim."  *Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1305 (N.D. Okla. 2008) (citing *Hill v. Steven Motors Inc.,* 97 F. Appx. 267, 280 (10th Cir.2004) (finding that because employer's alleged adverse action occurred before employee's first protected activity, it could not constitute valid basis for retaliation claim); *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1253 (D. Kan.2007) (noting that plaintiff's filing of an EEOC charge could not support retaliation claim when plaintiff's termination occurred prior to the filing of the charge)). Thus, the fact that Defendant did not change its decision not to move Plaintiff forward or consider Plaintiff's qualifications after Plaintiff complained does not establish retaliation, and Plaintiff has not cited any authority in support of this argument.

Based on the foregoing, I find that Plaintiff has not presented sufficient to show a casual connection between the protected activity and the challenged action. Defendant's Motion for Summary Judgment is thus granted as to the ADA retaliation claim.

IV.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. ) is

**GRANTED.**   Judgment shall enter in favor of Defendant and against Plaintiff on all

claims in this action.   It is

FURTHER ORDERED that the five-day jury trial set to commence Monday,

December 7, 2015, and the Final Trial Preparation Conference set Friday, November

13, 2015, at 10:00 a.m. are **VACATED**.

Dated:  August 27, 2015

BY THE COURT:


<u>s/ Wiley Y. Daniel</u>
Wiley Y. Daniel
Senior United States District Judge